782 May 29, 2025 No. 474

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. A.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

K. A.,
*Appellant.*

Clackamas County Circuit Court
24CC01988; A184104

Todd L. Van Rysselberghe, Judge.

Submitted April 29, 2025.

Liza Langford filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed.

**KAMINS, J.**

Appellant appeals a judgment involuntarily committing him to the Oregon Health Authority for up to 180 days and prohibiting him from purchasing or possessing firearms. ORS 426.130. Absent *de novo* review, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020) (internal quotation marks omitted). For the reasons explained below, the record was legally insufficient to allow a rational factfinder to conclude that appellant suffered from a mental disorder that makes him a danger to himself for purposes of the statutory standard and, therefore, reverse. ORS 426.005(1)(f)(A) (defining a "[p]erson with mental illness" as a person who, "because of a mental disorder," is "[d]angerous to self or others").

Appellant does not dispute that he suffers from a mental illness, nor does he dispute that his illness has caused him to engage in dangerous behavior. Appellant's illness involves "command hallucinations"—delusions that order him take action. In the months prior to his commitment, appellant would comply with those commands in inherently risky ways, including jumping off "High Rocks" into a river on a night when the temperature was below freezing and taking walks exceeding 100 miles in clothing insufficient for the weather. As to both of those instances, however, the record lacked evidence of any serious harm to appellant. The only testimony regarding the risks of that behavior indicated that it increased appellant's risk of "exposure" and "hypothermia." Although walking extremely long distances without adequate protection from the elements and cliff jumping into rivers in frigid weather are both concerning and risky, merely engaging in risky behavior is insufficient to demonstrate a danger to self justifying involuntary commitment. *State v. S. R. J.*, 281 Or App 741, 750, 386 P3d 99 (2016) ("Delusional or eccentric behavior—even behavior that may be inherently risky—is not necessarily sufficient to warrant commitment." (Internal quotations omitted.)). Rather, we

have typically required evidence of either prior harm or a "'path from mental disorder to serious harm'" that is "'concrete.'" *State v L. D.*, 310 Or App 347, 350, 484 P3d 1100 (2021) (quoting *S. R. J.*, 281 Or App at 751). The record did not contain evidence of either prior harm sufficient to justify involuntary commitment, or a concrete path connecting the risky behavior to serious harm. *See State v. M. L.*, 315 Or App 394, 401, 501 P3d 85 (2021) (concluding that the risk of harm to appellant from walking extremely long distances is not the sort of "'particularized'" and "'highly probable'" threat sufficient to establish that appellant was a danger to self (quoting *S. R. J.*, 281 Or App at 749)). For example, in addition to lacking evidence of any harm to appellant from jumping into a freezing river, the record lacked evidence as to the length of appellant's exposure, making it difficult to conclude appellant experienced harm at all. *See id.* at 400 (we cannot say appellant presented danger to self, in part, because record was "devoid of evidence regarding how long [appellant] was exposed to" dangerous chemicals).

Also, in response to the command hallucinations, appellant attempted to locate an electric guitar cord to wrap around his neck before someone intervened. Appellant did not take further steps to engage in self-harm, nor did he express suicidal ideations. Although, again, clearly concerning, such behavior is insufficient to establish a danger to self for purposes of ORS 426.005(1)(f)(A) under our case law. Absent any indication that the scenario was likely to repeat, such as suicidal ideations or repeated efforts to harm oneself, that evidence is insufficient to justify commitment. *See State v. T. Y.*, 285 Or App 21, 27, 396 P3d 986 (2017) (unpredictable nature of appellant's hallucinations coupled with his lack of suicidal ideation and the fact that appellant had only once attempted suicide made risk of future harm speculative); *cf. M. J. F.*, 306 Or App at 547 (recognizing the "principle" that a "present threat to commit suicide, coupled with a recent attempt to enact that threat through overt action" can be sufficient to permit a rational factfinder to conclude appellant presents a danger to self).

Reversed.